MICHAEL BRILEY                                                    PLAINTIFF

v.

U.S. UNITED BARGE LINE, LLC                                  DEFENDANT/
                                                         THIRD-PARTY PLAINTIFF

v.

DIXIE INDUSTRIES, a division of
COLUMBUS MCKINNON CORP.              THIRD-PARTY DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff Michael Briley's ("Briley") motion for

partial summary judgment (DN 53).  Defendant U.S. United Barge Line, LLC ("UBL") and

Third-Party Defendant Dixie Industries, a division Columbus McKinnon Corporation ("Dixie"),

have responded (DN 69, DN 74).[1]  Plaintiff has replied (DN 75).  This matter is now ripe for

adjudication.  For the reasons that follow, this motion is DENIED.

## BACKGROUND

The facts surrounding this matter are largely undisputed.  Between 2005 and December

2009, Briley worked as a member of the crew aboard the M/V CAROL McMANUS

("McMANUS"), a tugboat owned and operated by UBL.  By the time of this incident, Briley had

been promoted to first mate.  UBL is a barge company that hauls freight along the Mississippi

---

[1] While Briley has moved to strike Dixie's response to this motion for summary judgment
(DN 73), he has failed to offer a legitimate basis for doing so.  In fact, both his motion and reply
to Dixie's response offer no legal rules or decisions for such action.  Accordingly, the Court will
deny this request and consider Dixie's response to the motion for summary judgment.

and Ohio Rivers.

Individual barges are interconnected to one another and to the tugboat hauling them with a system of towing wires (a group of barges controlled by a single tugboat is collectively called its "tow"). Those wires are fastened to the individual barges on ratchets, which have pelican hooks where the wiring is affixed (wires and ratchets are collectively referred to as a barge's "rigging"). When barges are dropped from tow, the wiring must be removed by a tugboat's crew members. Part of Briley's day-to-day duties as the first mate included inspecting the rigging for defects and seeing to its replacement if necessary. He and other crew members also remove the rigging, as is required, when barges are dropped off at their destination. Although it is unclear whether his statements represent an industry norm, Briley testified at his deposition that when undue strain is placed on the rigging between barges, the wires themselves snap before the tension affects the ratchets to which they are affixed.

In the early hours of December 21, 2009, the McMANUS was depositing three barges into the Upper St. Rose Fleet, north of New Orleans on the Mississippi River. Two other harbor tugboats were located on either side of the McMANUS, holding its tow in place. Briley and another crew member, Bryan Wampler, were charged with removing the rigging between the three barges in preparation for their arrival.

On the barge farthest astern, the men encountered difficulty removing the rigging between the final two barges. Briley claims the tension on one particular wire was too great to detach it from the ratchet's pelican hook. As Briley and Wampler attempted to slacken the wire with a cheater pipe, the wire made a loud "pop," which caused both men to retreat from the area out of fear the wire would break. Briley and Wampler returned to the wire after a few moments

and began working on it anew. Briley also radioed the harbor tugboats to change their position so as to move the barges, which would loosen the wire and facilitate its unfastening. Moments later, the ratchet on the barge broke and either it, or the wire recoiling from the release of tension, struck Briley in his leg and fractured it. A subsequent investigation of the accident revealed that the pelican hook fastened to the ratchet snapped, although the reason why has yet to be ascertained. While there was some sheering on the pelican hook from prior use, the parties concede that the ratchet appeared to be in good condition before the incident and no obvious defects have been subsequently located either on or within the hook.

Briley pursues this action against UBL, alleging negligence under the Jones Act and claims of unseaworthiness, maintenance, cure, and wages under general maritime law. UBL has filed a third-party complaint against the manufacturer of the pelican hook, Dixie, requesting indemnity and contribution. Briley now moves for summary judgment on the claim of unseaworthiness, alleging there are no material facts surrounding the following issues: (1) the ratchet and pelican hook were being used for their ordinary and approved purposes when the accident occurred, (2) the pelican hook broke during that ordinary use, indicating it was defective equipment under the law of unseaworthiness, and (3) the rupture of the pelican hook proximately caused his injury. Briley says since the doctrine of unseaworthiness is akin to strict liability, nothing more is required and he is entitled to judgment as a matter of law on this claim.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In

determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

### I. The law of seaworthiness

Seaworthiness is often compared to claims under strict liability or those under a no fault regime. *See Gravatt v. City of New York*, 226 F.3d 108, 116 (2d Cir. 2000); *Barlas v. United States*, 279 F. Supp. 2d 201, 206 (S.D.N.Y. 2003). Such descriptions necessarily follow because shipowners have "an absolute duty to maintain a seaworthy ship, the breach of which imposes liability without fault." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 602 (6th Cir. 2001) (citing *Brown v. Dravo Corp.*, 258 F.2d 704, 706 (3d Cir. 1958)). Even with this high

4

standard, a vessel is not required to be "free from all possibility of mishap, for the seaworthiness of a ship is a relative concept, dependent in each instance upon circumstances." *Id.*

Litigants asserting a claim of unseaworthiness must show (1) the vessel's appurtenances were not "reasonably fit for their intended use" and (2) the unseaworthy condition proximately caused the seaman's injuries. *Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 904 (6th Cir. 2006); *accord Vankuiken v. Cent. Marine Logistics, Inc.*, No. 07-14543, 2008 WL 4601379, at *5-6 (E.D. Mich. Oct. 15 2008); *Barlas*, 279 F. Supp. 2d at 207-08. For proximate cause, "'[a] plaintiff must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness.'" *Miller v. Am. President Lines, Ltd.*, 989 F.2d 1450, 1463 (6th Cir. 1993) (quoting *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354 (5th Cir.), cert. denied, 488 U.S. 968 (1988)). Still, the "source of the malfunction" that causes the injury is irrelevant under unseaworthiness; after all, the doctrine is but a "*condition*, and how that condition came into being - where by negligence or otherwise - is quite irrelevant to the owner's liability for personal injuries resulting from it." *Perkins*, 246 F.3d at 602 n. 6 (citing *Ferrara v. A. & V. Fishing, Inc.*, 99 F.3d 449, 453 (1st Cir. 1996)) (emphasis in original).

Recovery under a claim of unseaworthiness is affected by issues of comparative negligence. *Churchwell*, 444 F.3d at 908-09. Since unseaworthiness does not impact the shipowner's negligence or fault, the Sixth Circuit stated in *Merlino v. U.S. Steel Corp.*, 52 F.3d 326 (6th Cir. 1995), that reducing a seaman's recovery as a result of their own negligence should be viewed as a "reduction of damages [by] apportioning causation rather than negligence." *Id.* at *6 n. 2. "[A]ny contributory negligence on the part of an injured worker which brings into play

an unseaworthy condition does not bar recovery; rather, the degree of contributory negligence is ground only for mitigation of damages." *Marchese v. Moore-McCormack Lines, Inc.*, 525 F.2d 831, 834 (2d Cir. 1975).

"[U]nseaworthiness is [generally] a question of fact for the jury and should not be resolved by the district court as a matter of law." *Churchwell*, 444 F.3d at 904. When however "neither party can explain phenomena illustrative of a vessel or appurtenance not reasonably fit for its intended use, the shipowner is liable as a matter of law." *Johnson v. Donjon Marine Co.*, No. 05-CV-1543, 2006 WL 3240730, at *3 (E.D.N.Y. Nov. 8, 2006) (citing *Van Carpals v. S. S. Am. Harvester*, 297 F.2d 9 (2d Cir. 1962). A defendant-shipowner may avoid such a result by showing a "genuine dispute as to whether the injury was caused by an unseaworthy condition or, instead, by an isolated act of negligence . . . ." *Id.* (citing *Sotell v. Maritime Overseas Inc.*, 474 F.2d 794, 796 (2d Cir. 1973)). Yet, the defendant must show the seaman's negligent act was the lone cause of the injury; if the seaman's negligence "only contributed to the consequences of a preexisting unseaworthy condition," it is insufficient to preclude summary judgment for the plaintiff. *Id.*

## II. Briley's motion for summary judgment

The question before the Court is whether the McMANUS, by virtue of the broken ratchet, is unseaworthy as a matter of law. The parties do not dispute the pelican hook broke under the strain of the barge or that Briley was using the ratchet, along with the hook, for its ordinary purpose. Nor do they contest that the hook's snapping was a direct cause of Briley's injuries. What is uncertain is why the pelican hook gave way that night, and this question drives UBL's and Dixie's opposition to this motion. Together, their responses offer three reasons why

summary judgment is improper at this stage: (1) Briley may have proximately caused his injury by returning to the ratchet after the first popping noise; (2) from the record, it is unclear whether the pelican hook was defectively manufactured or designed, which could be the ultimate cause of the accident; and (3) by ordering the harbor tugboats' realignment, Briley may have inadvertently and negligently overloaded the pelican hook.

UBL and Dixie criticize Briley's decision to reenter the ratchet's vicinity after hearing the first popping noise. They say he knew or should have known such a sound is the harbinger of the tow's wires breaking, and therefore he carries the blame for his injury. This argument confuses the applicable law. For unseaworthiness, Briley need only show "the device in question failed under conditions when it should have functioned properly" and this failure proximately caused his injury. *Greene v. Vantage S.S. Corp.*, 466 F.2d 159, 163 (4th Cir. 1972). His placement near the ratchet did not cause the pelican hook to snap and did not affect whether he improperly overloaded the pelican hook by directing the positions of the harbor tugboats. While approaching the ratchet after the popping sound or failing to notify a supervisor about the noise may raise issues of contributory negligence, they do not impact the question of seaworthiness. Accordingly, these portions of UBL's and Dixie's motion are irrelevant to the instant matter.[2]

Furthermore, the issues of defective design or manufacture will not influence whether Briley may recover under the law of unseaworthiness. Even if the facts demonstrate Dixie

---

[2] Briley alleges, and neither UBL or Dixie offer evidence to the contrary, that ratchets breaking on barges is highly irregular. Thus, the argument that Briley was negligent to approach the rigging after the popping sound is further undermined because he was injured not by a breaking wire (the harm associated with the popping) but by the ratchet's pelican hook giving way (a harm not linked to the noise he heard).

improperly manufactured or designed the pelican hook, such a finding does not impact UBL's "absolute duty to maintain a seaworthy ship." *Perkins*, 246 F.3d at 602; *accord Cal. Home Brands, Inc. v. Ferreira*, 871 F.2d 830, 836 (9th Cir. 1989) ("[T]he doctrine of seaworthiness imposes a heavy burden on shipowners, who are liable for the defective physical condition of their vessels regardless of fault." (citing *Flunker v. United States*, 528 F.2d 239, 242 (9th Cir. 1975))).  Any equipment aboard the McMANUS that fails for its ordinary purposes would violate this duty, regardless of how it came to be on the tugboat or why it did not perform.  *See Florida Marine Transporters, Inc. v. Sanford*, 255 F. App'x 885, 890 (5th Cir. 2007) ("Unseaworthiness . . . exists as a matter of law when equipment breaks in the ordinary course of business." (citing *Greene*, 466 F.2d at 162)).  UBL's suit against Dixie, a claim for indemnity or contribution, does not alter its non-delegable duty to provide a seaworthy ship and thus will not alter the substantive requirements of Briley's claim.

Assuming the reasons why the pelican hook gave way remain a mystery, Briley could still show the hook was an unseaworthy condition as a matter of law.  In *Wing v. Rockport S.S. Co.*, 30 F.R.D. 349 (W.D. Mich. 1962), the district court addressed a claim of seaworthiness where the boom of a ship broke and injured a seaman.  *Id.* at 350-51.  Finding no explanation for the accident, the court made the following remarks:

> All that was established, and from the evidence it would appear satisfactorily to this court, that the only logical conclusion that could be reached was that they were unable to determine the cause of the breaking of the boom, or what initially caused the breaking of the boom.  There wasn't the slightest evidence offered that an unnecessarily large load had been placed which caused a strain on the equipment, a matter which may or may not have been outside the control of the defendant.
>
> There is no question but what the boom broke. It was part of the gear of the ship. And in the light of the cases cited, . . . the jury could reach no logical conclusion except that the gear was defective.  And under [this precedent,] if the gear was

defective, the ship was unseaworthy.

*Id*. at 351. Irrespective of where the defect in the pelican hook originated - in Dixie's factory or aboard the McMANUS - if it was flawed, the tugboat was unseaworthy. *See Fasold v. Del. River & Bay Auth.*, 117 F. App'x 836, 838 (3d Cir. 2004) ("[T]he owner of a vessel has an absolute and non-delegable duty to provide a seaworthy ship."). Ergo, Briley's present claim of unseaworthiness is not interdependent on a finding of a design or manufacturing defect against Dixie.

UBL's and Dixie's motions gain the best traction with their final argument: the jury could find Briley overloaded the ratchet when he ordered the harbor tugboats to change position. The two collectively argue the ratchet and pelican hook were reasonably fit for their intended uses and only through Briley's negligence did the accident occur. Indeed, Dixie makes these express claims in earlier responses to requests for admissions and interrogatory answers. Resp. to Requests for Admiss., ¶¶ 6-7, DN 74-2 at 3; Resp. to Interrogatories, ¶ 3, DN 74-3 at 3. UBL and Dixie aver this motion is premature since the parties have not conducted expert discovery to further explore whether overloading the ratchet was the cause of its rupture. Briley responds that the parties opposing his motion have offered insufficient evidence to support such a contention.

"Where the evidence indicates that the plaintiff's own negligence was sole proximate cause of the plaintiff's injuries, then the plaintiff cannot establish a prima facie case. In such cases, the plaintiff does not lose because of his or her contributory negligence but rather because the defendant was not negligent." *See Churchwell*, 444 F.3d at 909 (citations omitted). If Briley's order to the harbor tugboats put undue strain on the ratchet and proximately caused it to break, the pelican hook was not an unseaworthy condition and UBL cannot be held liable. While

neither UBL nor Dixie has come forward with sufficient facts to rebut Briley's claim, this is excusable since discovery is only in its infancy. These parties will not have to identify their experts until February 1, 2012, and fact discovery will not be complete until April 1, 2012. To grant Briley's motion at this juncture would be to ignore the general rule "that summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery." *Vance v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996). This motion is better confronted at a later date, and therefore the Court will deny it.

Judging from the current record, the Court concludes either UBL or Dixie must raise an issue of material fact regarding how Briley's actions caused the overloading of the ratchet and subsequent failure of the pelican hook. Even if true, the decision to return to the ratchet after the popping noise or a possible latent defect with the pelican hook will not preclude Briley from recovering under the claim of unseaworthiness as a matter of law.

## CONCLUSION

IT IS HEREBY ORDERED:

(1)     Plaintiff's motion for summary judgement (DN 53) is DENIED. Plaintiff is granted leave to refile this motion at a later date once the parties have had an adequate opportunity to conduct discovery.

(2)     Plaintiff's motion to strike third party defendant's response to this motion (DN 73) is DENIED.